# 11-2420

## United States Court of Appeals for the Second Circuit

ALFRED G. OSTERWEIL,

*Plaintiff-Appellant,*

v.

GEORGE R. BARTLETT, III, in his official capacity as
Licensing Officer in the County of Schoharie

*Defendant-Appellee,*

DAVID A. PATERSON, in his official capacity as
Governor of the State of New York, ANDREW M. CUOMO,
in his official capacity as Attorney General of the State of New York,

*Defendants.*

On Appeal from the United States District Court
for the Northern District of New York

## BRIEF FOR APPELLEE

BARBARA D. UNDERWOOD
 *Solicitor General*
RICHARD DEARING
 *Deputy Solicitor General*
SIMON HELLER
 *Assistant Solicitor General*
  *of Counsel*

ERIC T. SCHNEIDERMAN
 *Attorney General of the
 State of New York*
Attorney for Appellee
120 Broadway
New York, New York 10271
(212) 416-8025

Dated: June 26, 2012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT ............................................................ 1

ISSUES PRESENTED ......................................................................... 7

STATEMENT OF THE CASE ............................................................... 8

    A.   New York's Residency Requirement for Handgun
          Licenses ................................................................................... 8

    B.   Statement of Facts ............................................................... 11

          1.   Plaintiff Alfred Osterweil ............................................ 11

          2.   Osterweil's Application for a Handgun License ............ 12

    C.   Procedural History ............................................................... 15

          1.   The Complaint .............................................................. 15

          2.   The District Court's Grant of Summary Judgment
              to Defendant Bartlett ...................................................... 16

SUMMARY OF ARGUMENT ............................................................. 18

ARGUMENT ..................................................................................... 21

POINT I   -   THIS COURT SHOULD CERTIFY TO THE NEW
             YORK COURT OF APPEALS THE QUESTION
             WHETHER "RESIDES" MEANS "IS DOMICILED"
             IN PENAL LAW § 400.00(3)(a)........................................ 21

             A. The Court of Appeals Should Be Given the
                Opportunity to Construe Penal Law
                § 400.00(3)(a)................................................................ 21

B. The Residency Provision in Penal Law
§ 400.00(3)(a) Is Better Construed Not To Impose
a Domicile Requirement. .............................................. 26

POINT II   -   EVEN IF § 400.00(3)(a) REQUIRED APPLICANTS
TO BE DOMICILED IN THE STATE, IT WOULD
BE CONSTITUTIONAL AS APPLIED TO
OSTERWEIL'S LICENSE APPLICATION ..................... 29

A. Rational Basis Scrutiny Applies To The Extent
Osterweil's Application Requested A License for
Target Practice and Hunting ...................................... 32

B. If Osterweil's Application Were Viewed as
Seeking a License for Use Only on His Own
Premises For Self-Defense,  At Most Intermediate
Scrutiny Would Apply and It Would be Satisfied
By A Domicile Requirement. ....................................... 35

1. Intermediate scrutiny applies to a regulation
that substantially burdens Second Amendment
rights. ...................................................................... 36

2. A domicile requirement applied to Osterweil
would satisfy intermediate scrutiny because it
would serve important state interests. .................. 37

POINT III -   A DOMICILE REQUIREMENT, AS APPLIED TO
OSTERWEIL, DOES NOT VIOLATE THE EQUAL
PROTECTION CLAUSE ................................................. 42

CONCLUSION ...................................................................... 44

ii

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Alliance of Am. Insurers v. Chu,*
77 N.Y.2d 573 (1991)................................................................27

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997)..................................................................24

*Bach v. Pataki,*
408 F.3d 75 (2d Cir. 2005) ........................................... passim

*Blumenthal v. Crotty,*
346 F.3d 84 (2d Cir. 2003) .................................................. 16

*Clark v. Jeter,*
486 U.S. 456 (1988)................................................................ 37

*District of Columbia v. Heller,*
554 U.S. 570 (2008)................................................. 1, 28, 36, 37

*Gan v. City of N.Y.,*
996 F.2d 522 (2d Cir. 1993) ...........................................15-16

*Hayden v. Paterson,*
594 F.3d 150 (2d Cir. 2010) ................................................ 43

*Matter of Dalton v. Drago,*
72 A.D.3d 1243 (3d Dep't 2010)......................................... 10

*Matter of Mahoney v. Lewis,*
199 A.D.2d 734 (3d Dep't 1993)................................. 1, 11, 28

*Matter of O'Connor v. Scarpino,*
83 N.Y.2d 919 (1994)........................................................... 10

*McDonald v. City of Chicago,*
130 S. Ct. 3020 (2010)............................................... 1, 28, 32

iii

*Morris v. Schroder Capital Mgmt. Int'l,*
   445 F.3d 525 (2d Cir. 2006) ............................................................. 22

*Nicholson v. Scopetta,*
   344 F.3d 154 (2d Cir. 2003) ....................................................... 24, 25

*Norton v. Sam's Club,*
   145 F.3d 114 (2d Cir. 1998) ............................................................. 17

*Portalatin v. Graham,*
   624 F.3d 69 (2d Cir. 2010) ................................................................. 5

*Schall v. Martin,*
   467 U.S. 253 (1984) ......................................................................... 38

*Schenck v. Pro-Choice Network of W. N.Y.,*
   519 U.S. 357 (1997) ......................................................................... 38

*Tunick v. Safir,*
   209 F.3d 67 (2d Cir. 2000) ....................................................... 22, 24, 25

*United States v. Decastro,*
   No. 10-3773, 2012 WL 1959072 (2d Cir. June 1, 2012) ............. passim

*United States v. Salerno,*
   481 U.S. 739 (1987) ......................................................................... 38

**State Statutes**

Penal Law
   § 265.00 ............................................................................. 1, 8, 10
   § 265.01 ..................................................................................... 8
   § 265.03 ..................................................................................... 8
   § 265.20 ..................................................................................... 9
   § 400.00 ............................................................................. passim

**Court Rules**

Second Cir. Local Rule § 0.27 ................................................................. 4

N.Y. Ct. of Appeals Rule [22 N.Y.C.R.R.] § 500.27 ............................. 4, 25

iv

## PRELIMINARY STATEMENT

Under New York law an individual seeking a license to possess a handgun must apply for the license in the county[1] "where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper." Penal Law § 400.00(3)(a). One New York intermediate appellate court—but not the New York Court of Appeals—has interpreted the statutory phrase "where the applicant resides" to mean "where the applicant is domiciled," with the result that that an applicant who is applying for a license on the basis of his place of residence rather than his place of business must be domiciled in New York. *Matter of Mahoney v. Lewis*, 199 A.D.2d 734, 735 (3d Dep't 1993). This decision pre-dated by nearly two decades the Supreme Court's holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), that the Second Amendment guarantees an individual right to possess a handgun for self-defense in the home that may not be infringed by the States.

---

[1] In the case of New York City, the application must be made to the city licensing officer, who by statute is the city police commissioner. Penal Law § 265.00(10).

Plaintiff Alfred Osterweil applied for a license in Schoharie County, New York, to possess a handgun for "target practice and hunting." At the time of the application, Osterweil was domiciled in Schoharie County, and he filed his application with Judge George R. Bartlett, a Schoharie County judge serving in his administrative capacity as firearms licensing officer, and the defendant in this case. While the license application was pending, Osterweil changed his domicile from New York to Louisiana, and so notified the firearms licensing officer. Judge Bartlett denied the license on the ground that Osterweil averred that he was not domiciled in New York. (Schoharie County lies within the jurisdiction of the Appellate Division, Third Department—the court that decided *Mahoney*.)

Rather than seek judicial review of that determination in the state courts—which could have reconsidered *Mahoney* in light of *Heller*—Osterweil filed suit against Bartlett in the United States District Court for the Northern District of New York. Osterweil's complaint alleges that the denial of the license violated his federal and state constitutional rights including, specifically, his Second Amendment right to bear arms. The complaint does not seek injunctive relief against

2

the enforcement of any provision of New York's statutes regulating firearms; nor does it seek a declaration that any such provision was unconstitutional. Instead, the complaint requests a federal court order directing issuance of "the type of permit originally applied for" (J.A. 11).

The district court (D'Agostino, J.), granted summary judgment to Bartlett. The court construed New York law to prohibit Osterweil as a nondomiciliary from obtaining a license as a New York resident. It then rejected Osterweil's arguments that the denial of his application violated his Second Amendment right because it found that limiting handgun licenses to domiciliaries "allows the government to monitor its licenses more closely and better insure public safety," and that this interest satisfied the intermediate scrutiny applicable to Osterweil's claim (J.A. 169). The court also rejected Osterweil's claims under the Equal Protection Clause, which it construed to include claims under the Privileges and Immunities and Due Process Clauses as well. Finally, the court declined to exercise jurisdiction over Osterweil's state-law claims.

Before deciding this appeal, this Court should certify to the New York Court of Appeals the question whether a person "resides" in a

place within the meaning of Penal Law § 400.00(3)(a) only if the person is domiciled there, or whether a part-time resident domiciled elsewhere also "resides" in a place for purposes of that statute. *See* Second Cir. Local Rule § 0.27; N.Y. Ct. of Appeals Rule [22 N.Y.C.R.R.] § 500.27. This question is "an unsettled and significant question of state law that will control the outcome" of this case, as required by Second Circuit Local Rule § 0.27, and it is a "determinative question[] of New York law . . . for which no controlling precedent of the Court of Appeals exists," as required by New York Court of Appeals Rule § 500.27(a). This Court should not decide a constitutional challenge to a state statute predicated on an interpretation of that statute that is likely incorrect.

The New York Court of Appeals has never construed the residency provision of Penal Law § 400.00(3)(a), and is likely not to construe it as imposing a domicile requirement for several reasons, as set forth below. First, the statute uses the language of residence rather than domicile. Second, the Third Department's 1993 *Mahoney* decision construing Penal Law § 400.00(3)(a) to impose a domicile requirement was issued well before *Heller* and *McDonald*, and was premised on a view of the Second Amendment that has now been rejected. Third, the New York

Court of Appeals would likely be guided by the principle that statutes should generally be construed to avoid constitutional doubts. For all these reasons, the phrase "where the applicant resides" in Penal Law § 400.00(3)(a) is best construed to include individuals who reside in New York seasonally and are domiciled elsewhere. If the New York Court of Appeals so construes the statute, appellant's constitutional challenge will be moot and this court will have no occasion to reach the constitutional issues Osterweil seeks to raise on this appeal.

In the event that the Court declines to certify the state law question, it should affirm the decision in this case on the merits, on the ground that any domicile requirement, to the extent one exists, would not violate the Second Amendment as applied to Osterweil's license application.[2] Osterweil applied for a license to possess a handgun for the purpose of target practice and hunting (J.A. 41), and not for the

---

[2] Alternatively, this Court could perhaps reach its own conclusion that New York's firearm licensing law requires residence rather than domicile in New York, and affirm on that ground, but in light of a decision to the contrary from an intermediate state appellate court, certification of the question to the state Court of Appeals would be more prudent and more respectful of the primary responsibility of the state courts for the construction of state law. *See Portalatin v. Graham*, 624 F.3d 69, 89-90 (2d Cir. 2010) (en banc).

purpose of self-defense in his Schoharie County residence. This Court has ruled that rational basis review applies to laws regulating gun possession that do not substantially burden the Second Amendment right to possess a handgun in the home for self-defense. If possession of a firearm for the purpose of target practice and hunting is protected by the Second Amendment at all, a domicile requirement for handgun licenses for that purpose would burden that right at most peripherally. The domicile requirement for a New York license would of course not bar a part-year resident from possessing a handgun for target practice and hunting in the State of his domicile. Nor would a domicile requirement bar a part-year New York resident from using firearms for target practice and hunting, because no license is required in New York to possess a long gun, such as a shotgun or rifle. Because of this minimal burden, rational basis review would apply, and the State's interests in investigating and monitoring the activities of those holding a handgun license would easily provide a rational basis for imposing a domicile requirement, if New York law indeed imposed such a requirement. Even if Osterweil's application were construed as an application to possess a handgun at his New York house for the

6

purposes of self-defense, the appropriate level of scrutiny is intermediate scrutiny, and the state interests in monitoring the activities of those holding a handgun license—which this Court has deemed substantial—would justify a domicile requirement.

## ISSUES PRESENTED

Penal Law § 400.00(3)(a) requires persons seeking a handgun license to apply for a license in the city or county "where the applicant resides." The questions presented are:

1.     Whether the court should certify to the New York Court of Appeals the question whether that provision requires only New York residence and not New York domicile, when the New York Court of Appeals has never construed the provision and the interpretation described above (a) is consistent with the statutory text, (b) avoids the constitutional question Osterweil seeks to raise here, and (c) was rejected only by a single intermediate state appellate court in reliance on a view of the law that has since been repudiated by *Heller* and *McDonald*, namely, that possession of a handgun is a privilege and not a right.

7

2. Whether the district court properly determined that, if New York requires an applicant for a handgun license to be domiciled in New York, that requirement is constitutional under the Second and Fourteenth Amendments as applied to Osterweil's application for a handgun license.

## STATEMENT OF THE CASE

### A. New York's Residency Requirement for Handgun Licenses

New York law makes it a misdemeanor to possess an unlicensed handgun (or other designated firearm), loaded or unloaded, in any location, Penal Law § 265.01, and makes it a class C felony to possess an unlicensed loaded handgun (or other designated firearm) outside the home, *id.* § 265.03(3). Long guns—including most rifles and shotguns— are excluded from these prohibitions.[3] Consequently, the possession and

---

[3] Penal Law § 265.00(3) defines "firearm" to include pistols and revolvers; shotguns with barrels less than eighteen inches in length; rifles with barrels less than sixteen inches in length; "any weapon made from a shotgun or rifle" with an overall length of less than twenty-six inches; and assault weapons.

8

carrying of long guns—commonly used for hunting—are not generally prohibited or subject to licensing in New York.

Licensed handguns are also exempted from the Penal Law's prohibitions on possession of firearms. *Id.* § 265.20(a)(3).[4] The law specifies the types of licenses available that authorize possession of a pistol or revolver. The licenses generally include: (1) a license to "have and possess in his dwelling by a householder"; (2) a license to "have and possess in his place of business by a merchant or storekeeper"; (3) a license to "have and carry concealed while so employed by a messenger employed by a banking institution or express company"; and (4) a license to "have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof." *Id.* § 400.00(2)(a)-(c) & (f).[5] A "carry concealed" license may be restricted to specific purposes set forth in the license

_____

[4] Other exemptions from the prohibition also exist, *inter alia*, for persons in state and federal military service and peace and police officers. Penal Law § 265.20(1).

[5] The remaining categories include licenses for certain state judges, certain state and local prison employees, and possessors and carriers of certain antique pistols. Penal Law § 400.00(2)(d), (e) & (g).

application, such as use in target practice or hunting. *Matter of O'Connor v. Scarpino*, 83 N.Y.2d 919, 921 (1994).

Section 400.00 also sets forth the standards for obtaining a handgun license. Applications for a handgun license are made to firearms licensing officers, Penal Law § 400.00(3)(a), who, in most of New York, are state judges. Penal Law § 265.00(10).[6] An applicant may obtain judicial review of the denial of a license in whole or in part by filing a petition under article 78 of the Civil Practice Law and Rules. *See, e.g., Matter of Dalton v. Drago*, 72 A.D.3d 1243 (3d Dep't 2010).

Penal Law § 400.00(3)(a) requires that an application for a handgun license must be submitted in the city or county "where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper." In 1993, the Appellate Division, Third Department addressed the meaning of the statutory language requiring applications, except those seeking use of a handgun during employment or operation of a shop, to be filed "where the applicant

---

[6] In New York City, Nassau County, and Suffolk County, designated police officials serve as licensing officers. Penal Law § 265.00(10).

resides." The court concluded that this language required an applicant to file for a license in the city or county of his domicile, meaning the residence he intends to be his fixed and permanent home. In reaching that holding, the court relied heavily on the notion that possession of a firearm is a privilege, not a right. *Mahoney*, 199 A.D.2d at 735.

The New York Court of Appeals has never had occasion to construe the meaning of § 400.00(3)(a), and no court in New York, including the Third Department, has addressed the meaning of the provision after the United States Supreme Court's rulings in *Heller* and *McDonald*.

### B.   Statement of Facts

#### 1.   Plaintiff Alfred Osterweil

Plaintiff Alfred Osterweil is a retired attorney (J.A. 17). As of March 2009, he owned four houses—two in Summit, New York, and two in Many, Louisiana—all of which he considered "his home" (J.A. 18). Sometime between May 21, 2008, and June 25, 2008, Osterweil changed his primary residence from New York to Louisiana (J.A. 46). Since then, he has continued to retain at least one house in Summit, New York for use as a "summer home" (*see* J.A. 14). Although the record is sparse

11

concerning the use and occupation of the Summit house, Osterweil has affirmed that his adult daughter lived in the house during a recent winter (J.A. 21).

### 2. Osterweil's Application for a Handgun License

In May 2008, when his primary residence was in Summit, New York, Osterweil submitted an application for a handgun license to the Sheriff's Department in Schoharie County, where Summit is located (J.A. 9, 25). Osterweil checked the box on the application for a "premises" license, but wrote in space provided on the application that he sought the license for the purpose of "target practice and hunting" (J.A. 41).

A few weeks later, the Sheriff informed Osterweil that he needed to "complete and/or correct" his application. The Sheriff explained that a "premises" license would be valid only "inside the residence" for which he applied, and that Osterweil's desire to use a handgun for "target practice and hunting" would require him to obtain a "carry concealed" license (J.A. 44).

On June 25, 2008, Osterweil told the Sheriff that he had purchased a home in Louisiana and intended to make Louisiana his "primary residence." Osterweil inquired whether this change in his residency status would disqualify him from obtaining a permit, stating that if it would, he saw "no sense in correcting the application" to clarify that he was seeking a concealed-carry permit (J.A. 46.)

Thereafter, Osterweil, the Sheriff, and Judge Bartlett, the firearm licensing officer for Schoharie County, exchanged several letters regarding Osterweil's application. Osterweil was informed that his fingerprints had been determined to be unusable (due to low quality) by both the Federal Bureau of Investigation and the New York State Division of Criminal Justice Services (J.A. 35). *See* Penal Law § 400.00(4) (requiring officer investigating applicant for firearms license to take the applicant's fingerprints and send one copy to the State Division of Criminal Justice Services and one to the Federal Bureau of Investigation for criminal records searches). Judge Bartlett advised Osterweil that, in addition to the lack of fingerprint quality, his out-of-state domicile might pose an obstacle to licensure (J.A. 79-80). On several occasions between March and May 2009, the judge offered to

13

permit Osterweil to appear before him for a hearing, but Osterweil expressed no real interest in doing so (*see* J.A. 36-37).

On May 29, 2009, Judge Bartlett issued a decision and order denying Osterweil's application for a handgun license on the ground that Osterweil was not domiciled in New York (J.A. 144). Because Schoharie County is located within the Third Department, Judge Bartlett cited the *Mahoney* decision as controlling on the meaning of the residency provision in § 400.00(3)(a). The judge rejected Osterweil's claim that New York's residency requirement, as previously construed by the Third Department, violated the Second Amendment under the Supreme Court's decision in *Heller* (J.A. 143-150). Judge Bartlett did not decide whether the quality of Osterweil's fingerprints would also prevent him from obtaining a license or determine whether Osterweil had satisfied all other requirements for licensure under New York law (J.A. 150 n.3).

Osterweil did not seek judicial review of Judge Bartlett's decision in the state courts. Thus, Osterweil did not seek to have the Third Department reconsider its earlier ruling in light of *Heller*—let alone seek to have the New York Court of Appeals address for the first time

14

the proper construction of the residency provision in Penal Law § 400.00(3)(a).

## C. Procedural History

### 1. The Complaint

The complaint, filed by Osterweil *pro se*, asserts causes of action under the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment, as well as claims under "the New York Constitution and Civil Rights Laws" (J.A. 10-11), against Bartlett in his official capacity as licensing officer.[7] The complaint requests an order directing that the defendants "provide plaintiff with the type of permit originally applied for, for costs of suit and such other damages and relief as the Court deems reasonable and appropriate" (J.A. 11).[8]

---

[7] The complaint also named then-Governor David A. Paterson and then-Attorney General Andrew M. Cuomo in their official capacities. Both defendants were dismissed by Memorandum Decision and Order dated February 24, 2010. (See Dkt. No. 15.) Osterweil's brief on appeal does not challenge the dismissal of these two defendants.

[8] Osterweil's appellate brief does not say whether he intends to pursue his request for money damages. Any claim for damages clearly fails as a matter of law based on Eleventh Amendment and qualified immunity defenses (*see* J.A. 13). The Eleventh Amendment bars damages against a state official sued in his official capacity, *Gan v. City*

(continued on the next page)

### 2. The District Court's Grant of Summary Judgment to Defendant Bartlett

The district court granted summary judgment to Bartlett on all claims. Citing *Mahoney*, the court assumed that the statutory residency requirement operated as a domicile requirement (J.A. 159-160). The court held that intermediate scrutiny was the appropriate legal standard for analyzing Osterweil's Second Amendment claim (J.A. 169), and held that the statute satisfied intermediate scrutiny because "there is a substantial relationship between New York's residency requirement and the government's significant interest" in monitoring eligibility for firearms licenses (J.A. 170). The district court then rejected Osterweil's equal protection claim, finding that "New York state residents and nonresidents are not similarly situated in terms of the state's ability to

---

*of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993), and Bartlett would be entitled to qualified immunity for his actions in his individual capacity, given that no clearly established law at the time even suggested that Bartlett's actions violated the Second Amendment, *see Blumenthal v. Crotty*, 346 F.3d 84, 102-03 (2d Cir. 2003).

obtain information about and monitor the potential licensee's eligibility or continued eligibility for a firearms license" (J.A. 172).[9]

Osterweil filed a notice of appeal. After Osterweil submitted his brief, Bartlett filed a motion asking this Court to certify to the New York Court of Appeals the dispositive legal question whether the statutory residency provision is properly construed as a domicile requirement, particularly in light of the decisions in *Heller* and *McDonald*. Circuit Judge Chin referred the motion to the merits panel (Dkt. No. 77).

---

[9] The district court construed other claims by Osterweil, couched by him as equal protection claims, as claims that denial of his license application violated his right to travel under the Privileges and Immunities Clause and his right to substantive and procedural due process (J.A. 172 n.11). The district court rejected each, and Osterweil has not pursued any of these arguments on appeal. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). The court declined to exercise supplemental jurisdiction over Osterweil's state-law claims (J.A. 178).

## SUMMARY OF ARGUMENT

Appellant Osterweil's arguments in this appeal rest on two fundamentally incorrect premises. First, he is proceeding as if New York State's highest court has authoritatively construed the residency language of Penal Law § 400.00(3)(a) as a domicile requirement that bars him from obtaining his handgun license. Second, he is litigating this appeal as if he had applied for a handgun license for the purpose of self-defense in the home, when in fact he sought a handgun license for target practice and hunting.

Osterweil's false premise regarding a domicile requirement is based on a construction of New York's firearms license-application statute made by a single intermediate state appellate court years before *Heller* and *McDonald*, which construction relied on the absence of a Second Amendment right to possess a handgun. That construction is unlikely to be adopted by the New York Court of Appeals now because it raises doubts about the constitutionality of the statute. Thus, this Court should certify to the New York Court of Appeals this unsettled, significant, and dispositive question of state law. Certification would avoid both the unnecessary decision of hypothetical constitutional

18

questions, and potential conflict with the State's highest court on a matter of state law.

In the event that the Court declines to certify the case to the New York Court of Appeals, it should affirm the district court's grant of summary judgment on the merits. The Second Amendment right at issue here is not the core right recognized in *Heller* and *McDonald*: the right to possess a handgun in the home for self-defense. Instead, the interest actually at issue on the facts of this case is Osterweil's interest, as reflected in his handgun license application, in possessing a handgun for target practice and hunting. Under this Court's recent decision in *United States v. Decastro*, rational-basis review applies unless a law imposes a "substantial burden" on Second Amendment rights. No. 10-3773, 2012 WL 1959072 (2d Cir. June 1, 2012). A New York domicile requirement, as applied to Osterweil, would impose no such substantial burden, because it would not prevent him from possessing a handgun for target practice and hunting in the State of his domicile, and would permit him to use long guns for target practice and hunting during his summers in New York. Consequently, rational-basis review would apply, and New York's interest in facilitating effective investigation and

19

monitoring of persons holding New York handgun licenses would easily suffice to sustain the law.

Even if a domicile requirement, as applied to Osterweil's request for a handgun license for target practice and hunting, were deemed to impose a substantial burden on his Second Amendment right to self-defense of the home, the law would at most be reviewed under intermediate scrutiny. And a domicile requirement applied to Osterweil would survive intermediate scrutiny because it serves the substantial state interest in monitoring the activities of firearms licensees, especially given Osterweil's inability to produce usable fingerprints for a criminal background check.

# ARGUMENT

## POINT I

## THIS COURT SHOULD CERTIFY TO THE NEW YORK COURT OF APPEALS THE QUESTION WHETHER "RESIDES" MEANS "IS DOMICILED" IN PENAL LAW § 400.00(3)(a)

### A. The Court of Appeals Should Be Given the Opportunity to Construe Penal Law § 400.00(3)(a).

Osterweil's constitutional arguments are premised on the notion that the residency provision in Penal Law § 400.00(3)(a) requires an applicant for a firearm license to be domiciled in New York. This question has never been definitively resolved under New York law, however. Defendant Bartlett understandably felt constrained by the Third Department's 1993 *Mahoney* decision to apply the statute as a domicile requirement. But the New York Court of Appeals has never construed § 400.00(3)(a), and no New York court, including the Third Department, has addressed the meaning of the provision since the Supreme Court decided *Heller* and *McDonald*. This Court should certify to the New York Court of Appeals the question whether § 400.00(3)(a) imposes a domicile requirement, because the answer to that question may well eliminate the need to decide whether a domicile requirement,

21

if New York law imposed one, would comport with the Second Amendment.

The general standards governing certification are well established in this Circuit. "In determining whether to certify a question our Court considers . . . : (1) the absence of authoritative state interpretations of the state statute; (2) the importance of the issue to the state . . . ; and (3) the capacity of certification to resolve the litigation." *Morris v. Schroder Capital Mgmt. Int'l,* 445 F.3d 525, 531 (2d Cir. 2006) (quotation marks and citations omitted). All three factors point decisively toward certification here. First, there is no authoritative state court decision construing Penal Law § 400.00(3)(a): the New York Court of Appeals has never addressed the issue, and, as explained below, the reasoning of the Third Department's 1993 *Mahoney* decision has been called into serious question by the Supreme Court's decisions in *Heller* and *McDonald*. Second, the issue is of great importance to the State because the proper interpretation of § 400.00(3)(a) is essential to the day-to-day administration of New York's regulation and licensing of handguns. *See Tunick v. Safir*, 209 F.3d 67, 78 (2d Cir. 2000) (certifying where question of law concerned "more than [New York's] generic

22

interest in enforcement of its laws," and instead "entail[ed] core governmental functions"). Third, if the Court of Appeals were to hold that the residency provision does not impose a domicile requirement, but rather permits part-year residents owning property in New York to apply for a handgun license, this litigation would thereby be resolved.[10]

This Court has recognized that certification serves particularly critical federalism interests in cases like this one, where a state statute implemented by state officials is under federal constitutional challenge, and the state courts have not yet had the opportunity to resolve questions of statutory interpretation that bear directly on the constitutional issues raised. In such cases, certification allows the Court to avoid deciding the constitutionality of a state statute "unnecessarily

---

[10] Even if the putative domicile requirement of Penal Law § 400.00(3)(a) were eliminated, whether by statutory interpretation or constitutional adjudication, Osterweil would nevertheless not be entitled to the relief he requested—an order directing issuance of a handgun license—because it has not yet been determined whether he satisfies all valid statutory requirements for eligibility. For example, because of the low quality of his fingerprints, a state official has not completed an investigation of "all statements . . . in the application," Penal Law § 400.00(4), including a criminal background search to verify that Osterweil has not been convicted of "a felony or a serious offense," *id.* § 400.00(1)(c).

23

or prematurely," and prevent "the potential for 'friction-generating error' between the federal and state court systems.'" *Tunick*, 209 F.3d at 72, 77 (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 79 (1997)).

Certification has the further benefit in these cases of allowing the canon of constitutional avoidance to come into play. Where a state law is at issue, "only the state court can ultimately determine whether a saving interpretation is appropriate under the canons of interpretation of the particular state whose statutes it is called upon to construe." *Id.* at 75. "[S]tate law [may] allow state courts to rewrite state statutes to a degree that would be impermissible for federal courts dealing with federal laws." *Id.* at 76. The "question of the extent to which the state court can go when interpreting its own laws is paradigmatically one of state law, and it is one that federal courts are singularly unsuited to answer." *Id.*

These same considerations of comity and federalism also animate the well-established doctrine of *Pullman* abstention. Indeed, "[c]ertification today covers territory once dominated by . . . '*Pullman* abstention.'" *Arizonans,* 520 U.S. at 75; *accord Nicholson v. Scopetta*,

344 F.3d 154, 168 (2d Cir. 2003) (quoting *Arizonans*). The *Pullman* doctrine holds that a federal court "must abstain from [its] equity jurisdiction when a federal constitutional ruling could be avoided 'by a controlling decision of a state court,' and a state court decision can be pursued consistent 'with full protection of the constitutional claim.'" *Nicholson,* 344 F.3d at 167 (quoting *R.R. Comm'n v. Pullman Co.,* 312 U.S. 496, 500–01 (1941)).

Because both factors are present here, abstention would be appropriate were certification not available. But certification is available under the rules of the New York Court of Appeals, Rule § 500.27, and certification is preferable to abstention because it permits a faster resolution of the proper construction of New York's residency provision by allowing the case to be sent directly to the state's highest court. *See Tunick*, 209 F.3d at 79 ("[T]he delay created by certification is almost never as great as that imposed by abstention."). This Court has recognized that it "may elect to certify, rather than abstain" where it would be more efficient to do so, *Nicholson*, 344 F.3d at 168, and for efficiency reasons it should opt to certify, not abstain, here.

25

There is little risk that any delay due to certification would harm Osterweil's asserted constitutional rights. He has acknowledged that he uses his New York house only as a "summer house" (J.A. 16), and it seems unlikely that this case can be decided before the end of the summer of 2012, whether or not this Court certifies the dispositive legal question to the state high court. And Osterweil's interest in using handguns for target practice and hunting in New York in the summer of 2013 will not be affected by the time it may take for this Court to certify the question to the Court of Appeals and to receive from that Court any answer it may choose to provide.

### B. The Residency Provision in Penal Law § 400.00(3)(a) Is Better Construed Not To Impose a Domicile Requirement.

Certification is especially appropriate here, because the procedure not only respects the authority of the state courts to construe state law, but also will likely avoid the constitutional challenge that Osterweil seeks to present. First, the plain language of Penal Law § 400.00(3)(a) may easily be construed not to impose a domicile requirement. The statutory text—which requires an applicant to apply for a handgun license "where the applicant resides"—is readily construed to allow an

application to be submitted in a city or county where the applicant owns a part-time residence, even if the residence is not the applicant's domicile. Thus, if the issue is presented to the state courts, the canon of constitutional avoidance alone may well settle the matter. *See, e.g., Alliance of Am. Insurers v. Chu*, 77 N.Y.2d 573, 585 (1991) (canon requires New York Court of Appeals "to avoid interpreting a statute in a way that would render it unconstitutional if such a construction can be avoided").

Even without invoking the avoidance canon, § 400.00(3)(a) is better read not to impose a domicile requirement. By its terms, the phrase "where the applicant resides" specifies the place where a license application must be filed, not a substantive requirement for licensure as such. Penal Law § 400.00(1), governing eligibility for firearms licenses, contains numerous substantive eligibility requirements, but no requirement of domicile in New York. The residency provision in § 400.00(3)(a) thus seems to serve primarily the purpose of requiring a person to apply for a handgun license where the license would be used, where the application can be best investigated, and where officials may monitor the presence of firearms in their communities.

The location of a person's part-time residence in New York is an appropriate and convenient place for the person to apply for a handgun license, regardless of whether the residence is also the person's domicile. Thus, although it is reasonable to construe the phrase "where the applicant resides" as effectively imposing a state residency requirement—someone who does not reside in any city or county of the State cannot apply to any licensing officer—the likely purpose of the phrase is satisfied without construing it to impose a requirement that the applicant be domiciled in New York.

Furthermore, the primary reason that the Third Department previously gave for construing the residency provision as a domicile requirement is no longer valid. The court in *Mahoney* recognized that "the technical distinction [between domicile and residency] is well appreciated." 199 A.D.2d at 735. The court nonetheless construed the residency provision to require domicile on the ground that possession of a firearm is a privilege, not a right. *Id.* The Supreme Court's decisions in *Heller* and *McDonald* squarely refute any such notion. *Heller*, 554 U.S. at 576-626; *McDonald*, 130 S. Ct. at 3026. This intervening change in law alone makes it highly unlikely that the Court of Appeals—or

28

indeed, even the Third Department itself—would today adopt *Mahoney*'s construction of the residency provision in Penal Law § 400.00(3)(a).

## POINT II

### EVEN IF § 400.00(3)(a) REQUIRED APPLICANTS TO BE DOMICILED IN THE STATE, IT WOULD BE CONSTITUTIONAL AS APPLIED TO OSTERWEIL'S LICENSE APPLICATION

Osterweil's standing under *Bach v. Pataki,* 408 F.3d 75, 82 (2d Cir. 2005), to bring a constitutional challenge to the licensing officer's denial of his application is doubtful at best. Under *Bach*, a person challenging a licensing scheme must first apply for the license unless such an application would be futile. *Id.* at 83. Osterweil failed to pursue his application by seeking state court review of the continuing validity of the domicile requirement adopted in *Mahoney*. The purpose of generally requiring an application for a license before challenging a licensing scheme is to "prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* at 82 (quotation marks and citations omitted). When Osterweil's license application was addressed at the administrative review level,

29

the Supreme Court's decision in *Heller* had already cast strong doubt on *Mahoney*'s reasoning. Thus, seeking state court review of the licensing officer's decision would have been far from futile: it might have led to reconsideration by the Third Department itself in light of *Heller*'s recognition of an individual right to bear arms, and state court review might have clarified the type of license Osterweil actually sought— whether he sought a license for premises, or for concealed carrying for the purpose of hunting and target practice. Now, due to Osterweil's failure to pursue his application through state court review, this Court is faced with a dispute that may well be predicated on an incorrect view of the New York statute at issue. Thus, under *Bach*, Osterweil lacks standing.

Even if Osterweil has standing, his arguments on the merits of his constitutional challenge fall short. First, he repeatedly invokes the Second Amendment right of an individual to possess a firearm in his home for the purpose of self-defense. But these arguments may well be misplaced, because Osterweil did not seek a handgun license for the purpose of self-defense in the home. *See Decastro*, 2012 WL 1959072, at *7 (rejecting availability of overbreadth analysis in Second Amendment

30

case). Rather, he sought a "premises" license for use in target practice and hunting—a type of license that does not exist—and his complaint sought an order directing issuance of "the type of permit originally applied for" (J.A. 11).

Consequently, if this statute were deemed to contain a domicile requirement, its constitutionality could be at issue here not as applied to a license for possession of a handgun in the home for self-defense, as Osterweil now contends, but rather as applied to the license he sought—a license for possession of a handgun for the purpose of target practice and hunting. As applied to a license for target-practice and hunting, as explained below, there can be no doubt that a domicile requirement would be constitutional. Alternatively, even if Osterweil's application were viewed as seeking a license for self-defense of his New York house, a domicile requirement would be constitutionally permissible as to Osterweil.

## A. Rational Basis Scrutiny Applies To The Extent Osterweil's Application Requested A License for Target Practice and Hunting.

Osterweil initially filed an application for a "premises" license, explaining his purpose as "target practice and hunting," which is not a purpose consistent with a premises license. He never corrected this internally inconsistent application. To the extent his application is properly viewed as seeking a license to carry a weapon for the purpose of target practice and hunting, it plainly falls outside the core concerns of the Second Amendment as elaborated in *Heller* and *McDonald*. These decisions established that "the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense." *McDonald*, 130 S. Ct. at 3050.

In *Decastro*, decided after *Heller* and *McDonald,* this Court considered a federal statute that similarly did not directly implicate the right of self-defense in the home. *Decastro* addressed a Second Amendment challenge to 18 U.S.C. § 922(a)(3), which prohibits, with certain exceptions, the transport of a firearm purchased outside a person's State of residence into the State of residence. 2012 WL 1959072, at *1. This Court observed that *Heller* and *McDonald*

32

approved laws prohibiting the carrying of firearms in sensitive places and regulating the commercial sale of arms, and concluded therefore that "time, place and manner restrictions may not significantly impair the right to possess a firearm for self-defense, and may impose no appreciable burden on Second Amendment rights." *Id.* at *4. Moreover, the Court stated that *Heller* and *McDonald* emphasize "the practical impact of a challenged regulation on the ability of citizens to possess and use guns for the core lawful purpose of self-defense." *Id.* Accordingly, this Court determined that "heightened scrutiny [under the Second Amendment] is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) operate as a substantial burden on the ability of law-abiding citizens to possess an use a firearm for self-defense (or for other lawful purposes)." *Id.* at *5.[11] The Court further held that a "law that regulates the availability of

---

[11] *Decastro* found this "substantial burden" trigger for heightened scrutiny consistent with the treatment of "other fundamental constitutional rights," such as the right to marry, the right to vote, the right to choose an abortion, and the right to free speech. 2012 WL 1959072, at *5-*6.

firearms is not a substantial burden . . . if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense." *Id.* at *6.

Under *Decastro*, rational basis scrutiny, not any form of heightened scrutiny, would apply here, because any domicile requirement, as applied to Osterweil's application for a license restricted to target practice and hunting, would not substantially burden his Second Amendment rights. A domicile requirement would bar Osterweil only from possessing a handgun for target practice and hunting during the summer months that he spends in New York (to the extent any of his planned hunting would be permitted in the summer). New York's domicile requirement would obviously not bar him from target practice and hunting during the majority of the year, which he apparently spends in his domicile of Louisiana or elsewhere outside New York. Nor would a domicile requirement for handgun licenses used for target practice and hunting bar Osterweil from possessing a long gun during summers in New York for use in target practice or hunting (*see* J.A. 148 ("New York law allows a non-resident, such as the applicant, to possess long guns")). The record contains no evidence that establishes, or even suggests, that Osterweil requires (for some reason)

34

a handgun, rather than a long gun, for any planned target practice and hunting in New York. Particularly in light of the absence of any assertion of a self-defense purpose in his application for a license, the availability of adequate alternatives for Osterweil to pursue target practice and hunting means that any domicile requirement, as applied to Osterweil, would not be subject to heightened scrutiny under *Decastro*. Osterweil does not suggest that a domicile requirement would fail rational basis scrutiny, and, indeed, for reasons explored more fully below, because a domicile requirement would satisfy intermediate scrutiny, it would also satisfy rational basis scrutiny.

**B. If Osterweil's Application Were Viewed as Seeking a License for Use Only on His Own Premises For Self-Defense, At Most Intermediate Scrutiny Would Apply and It Would be Satisfied By A Domicile Requirement.**

Even if Osterweil's Second Amendment right to possess a handgun in his New York house for self-defense were at issue here—and his actual license application leaves that question in doubt—a domicile requirement, as applied to Osterweil, would satisfy the applicable intermediate scrutiny.

35

1. **Intermediate scrutiny applies to a regulation that substantially burdens Second Amendment rights.**

As this Court has observed, in both *Heller* and *McDonald*, the Supreme Court "declined to announce the precise standard of review applicable to laws that infringe the Second Amendment because the laws at issue . . . would be unconstitutional '[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights.'" *Decastro*, 2012 WL 1959072, at *4 (quoting *Heller*, 554 U.S. at 628-29). As discussed above, under *Decastro*, heightened scrutiny is reserved for "regulations that burden the Second Amendment right substantially." *Id.* at *5.

Assuming that Osterweil sought a handgun license for self-defense in his New York house, the appropriate level of heightened scrutiny would be at most intermediate scrutiny, as the district court found here. Osterweil's brief urges this Court to apply strict scrutiny, but does not cite a single case supporting application of strict scrutiny, even with respect to the "core" home self-defense component of the Second Amendment right. Nor has Osterweil cited a single case holding that strict scrutiny applies to a regulation of handgun possession in

each of several houses that an individual owns. On the contrary, strict scrutiny is not the appropriate standard of review even for regulations that substantially burden the "core" Second Amendment right of self-defense in the home. *See Heller*, 554 U.S. at 688 (Breyer, J., dissenting) (observing that Court's opinion rejects strict scrutiny "by broadly approving a set of laws . . . whose constitutionality under a strict scrutiny standard would be far from clear"). Because Osterweil has presented no authority and no persuasive argument supporting application of strict scrutiny to a domicile requirement applied to a handgun license for self-defense in one of several houses an individual owns, this Court should apply at most intermediate scrutiny.

> **2. A domicile requirement applied to Osterweil would satisfy intermediate scrutiny because it would serve important state interests.**

To satisfy intermediate scrutiny, a state regulation "must be substantially related to an important governmental objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Application of a domicile requirement to Osterweil's application easily satisfies this test.

As is the case with many handgun laws, New York's licensing regime aims to protect the public safety and prevent handgun crime.

The state interests in public safety and crime prevention are undoubtedly compelling. *See United States v. Salerno*, 481 U.S. 739, 748 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984); *see also Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 376 (1997) (content-neutral injunction against First Amendment conduct justified by government interest in "public safety and order"). Indeed, plaintiff's brief concedes (Br. at 36) that the state interest in public safety "may be compelling."

These interests would justify applying a domicile requirement to Osterweil's license application, if New York law did so. In *Bach v. Pataki*, this Court specifically discussed the important interests served by the residency provision in Penal Law § 400.00(3)(a). 408 F.3d at 91. The Court there rejected a challenge to the residency provision brought under the Second Amendment and the Privileges and Immunities Clause of article IV of the Constitution. *Bach* did not address whether the residency provision would be constitutional if applied as a domicile requirement, because the plaintiff in that case was neither a resident nor a domiciliary of New York. *See id.* at 76.

38

To be sure, *Bach* rejected the plaintiff's Second Amendment claim on the ground that the Second Amendment does not apply to state laws regulating gun possession, *id.* at 84, and the Supreme Court's decisions in *Heller* and *McDonald* have overruled that holding. Nonetheless, this Court's analysis in *Bach* regarding the purposes served by New York's residency requirement, which it undertook in addressing the plaintiff's challenge under the Privileges and Immunities Clause,[12] remains accurate and persuasive. In addition, as explained below, the Court's analysis in *Bach* would apply in large part to a domicile requirement, not only to a simple residency requirement.

The Court's analysis in *Bach* demonstrates that a domicile requirement would satisfy intermediate scrutiny. *Bach* identified a

---

[12] *Bach*'s analysis of the importance of the State's interest in monitoring licensees' activities, as well as the tailored connection between that interest and a residency requirement, is contained in the Court's discussion of Bach's right to travel claim arising under the Privileges and Immunities Clause. Under that Clause, when a State discriminates against citizens of another State, it may successfully defend that discrimination by showing a "substantial reason" for the discrimination and a reasonably tailored relationship between "'the degree of discrimination exacted and the danger sought to be averted by enactment of the discriminatory statute.'" *Bach*, 408 F.3d at 88 (quoting *Blumenthal*, 346 F.3d at 94 ).

39

substantial state interest in treating residents and nonresidents differently for the purpose of obtaining a handgun license. This interest also justifies treating domiciliaries and nondomiciliaries differently, because a part-time resident's activities outside the State are just as much beyond the State's control as are those of a visitor. The Court recognized that the State's monitoring interest "in continually obtaining relevant behavioral information" about individuals licensed to possess firearms is substantial and justifies treating non-residents differently from residents in its firearm licensing statutes. *Bach*, 408 F.3d at 91. The State has a reduced ability to monitor both nonresidents and part-time residents for two main reasons. First, "[t]he State can only monitor those activities that actually take place in New York. Thus, New York can best monitor the behavior of those licensees who spend significant amounts of time in the State." *Id.* at 92. Here, the record does not establish how much time Osterweil spends in New York, even during the summer. Second, "other States . . . cannot adequately play the part of monitor for the State of New York or provide it with a stream of behavioral information approximating what New York would gather" because "[t]hey do not have the incentives to do so." *Id.* The Court in

40

*Bach* also found New York's "nonresident distinction" in its firearm licensing statutes to be "tailored to the State's [substantial] monitoring interest." *Id.* at 94. A requirement that treats domiciliaries differently from nondomiciliaries with only seasonal residence in New York would also be tailored to the monitoring interest; a part-time resident may spend even less time in the State than a visitor.

*Bach*'s analysis, applied to Osterweil, means that the denial of his license application on nondomicile grounds would survive intermediate scrutiny. Indeed, if anything, New York's substantial interest in monitoring is even stronger with respect to Osterweil. First, as the district court observed, Osterweil's vacation house in New York "is no longer his 'home'" (J.A. 169). Indeed, the record does not disclose how much time he spends in the house he owns in Schoharie County; on the contrary, the record suggests that his adult daughter has used the house as her residence (*see* J.A. 124). It may be that Osterweil himself spends only a handful of days a year in New York. Second, Osterweil has not provided fingerprints usable by the federal and state governments. In the absence of what his own brief calls "usable fingerprints" (Br. at 44), New York is yet more limited in its ability to

41

monitor Osterweil's activities—especially his out-of-state activities—than it was in its ability to monitor the plaintiff in *Bach*, and the State's justification for denying Osterweil a handgun license would be correspondingly stronger than the interests discussed in *Bach*.

Thus, as applied to Osterweil and on this record, a domicile requirement would survive intermediate scrutiny because it would serve the State's substantial interest in monitoring the activities of firearms licensees.

## POINT III

### A DOMICILE REQUIREMENT, AS APPLIED TO OSTERWEIL, DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE

Osterweil claims that a domicile requirement, applied to him and his application for a target-practice and hunting license, violates the Equal Protection Clause because it treats him differently from a person who is domiciled in New York, and that this different treatment fails strict scrutiny. But Osterweil, as a part-time resident of New York, is not similarly situated to a person domiciled in New York. Indeed, because of his "worn fingerprints" (J.A. 143), Osterweil himself is not

even similarly situated to other part-time residents of New York whose fingerprints are usable by criminal justice agencies. This difference between Osterweil and the vast majority of other applicants for handgun licenses alone means that there is no equal protection violation because he is not similarly situated to persons domiciled in New York.

Even if Osterweil were similarly situated to other applicants, he has provided no support for applying strict scrutiny to his equal protection claim. As shown *supra*, at most intermediate scrutiny would apply to Osterweil's Second Amendment claim. There is no justification for apply a higher level of scrutiny to Osterweil's equal-protection claim, which is premised on a classification based on his Second Amendment right, than would be applied to the underlying constitutional right itself. *Cf. Hayden v. Paterson*, 594 F.3d 150, 170 (2d Cir. 2010) (felon disenfranchisement statute not subject to strict scrutiny even though it affects fundamental right to vote).

43

## CONCLUSION

For the foregoing reasons, the Court should grant the State's motion for certification of a controlling question of law to the New York Court of Appeals or, in the alternative, affirm the judgment of the district court.

Dated:   June 26, 2012
            New York, New York

                                        Respectfully submitted,

                                        ERIC T. SCHNEIDERMAN
                                          *Attorney General of the*
                                          *State of New York*
                                        Attorney for Appellee


                                        By:   /s/ Simon Heller
                                              SIMON HELLER
                                              Assistant Solicitor General

                                              120 Broadway, 25th Floor
                                              New York, NY 10271
BARBARA D. UNDERWOOD                          (212) 416-8025
  *Solicitor General*
RICHARD DEARING
  *Deputy Solicitor General*
SIMON HELLER
  *Assistant Solicitor General*
        *of Counsel*

44

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, Oren L. Zeve, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 8,311 words and complies with the type-volume limitations of Rule 32(a)(7)(B).


   /s/ Oren L. Zeve
      Oren L. Zeve