# 11-2420 cv

### In the

# United States Court of Appeals

### for the Second Circuit

Alfred G. Osterweil,

*Plaintiff - Appellant*,

v.

George R. Bartlett, III,
In his official capacity as Licensing Officer in the County of Schoharie,

*Defendant – Appellee*,

David A. Paterson, in his official capacity as
Governor of the State of New York; Andrew M. Cuomo, in his official capacity as
Attorney General of the State of New York,

*Defendants*.

**On Appeal from the United States District Court
for the Northern District of New York (Syracuse)**

## REPLY BRIEF FOR APPELLANT ALFRED G. OSTERWEIL

Paul D. Clement
D. Zachary Hudson
BANCROFT PLLC
1919 M Street, N.W., Suite 470
Washington, D.C. 20036
(202) 234-0090
pclement@bancroftpllc.com

Daniel L. Schmutter
GREENBAUM, ROWE, SMITH
  & DAVIS LLP
P.O. Box 5600
Woodbridge, NJ 07095
(732) 549-5600
dschmutter@greenbaumlaw.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION AND SUMMARY .................................................1

ARGUMENT ...................................................................................3

I.     Because This Case Turns On The Scope Of Mr. Osterweil's Federal Constitutional Rights, Certification Is Unnecessary. ........................3

II.    Bartlett's Attempts To Distract This Court From Addressing The Constitutional Issue At The Heart Of This Case Are Unavailing. ...............10

III.   New York's Ban On In-Home Handgun Possession By Part-Time State Residents Violates The Second Amendment. .....................................17

       A.     A Complete Ban On In-Home Handgun Possession Cannot Survive *Heller*. ...................................................................17

       B.     New York's Ban On In-Home Handgun Possession By Part-Time Residents Fails Strict Scrutiny...................................................19

IV.   New York's Ban On In-Home Handgun Possession By Part-Time State Residents Violates The Equal Protection Clause. ...............................23

CONCLUSION ...............................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997).................................................................7

*Bach v. Pataki*,
  408 F.3d 75 (2d Cir. 2005) ........................................11

*Baker v. Carr*,
  369 U.S. 186 (1962).................................................10

*Bogle-Assegai v. Connecticut*,
  470 F.3d 498 (2d Cir. 2006) ......................................12

*City of New York v. Golden Feather Smoke Shop, Inc.*,
  597 F.3d 115 (2d Cir. 2010) .........................................5

*Conn. Dep't of Envtl. Prot. v. OSHA*,
  356 F.3d 226 (2d Cir. 2004) .........................................8

*DiBella v. Hopkins*,
  403 F.3d 102 (2d Cir. 2005) .........................................5

*\*District of Columbia v. Heller*,
  554 U.S. 570 (2008)......................................... *passim*

*Elrod v. Burns*,
  427 U.S. 347 (1976)...................................................8

*Emp't Div., Dep't of Human Res. of Oregon v. Smith*,
  494 U.S. 872 (1990)..................................................16

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ................................. 16, 17

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ..........................................9

---

[*] Citations upon which Appellant primarily relies are marked with asterisks.

*Highland Capital Mgmt. v. Schneider*,
  460 F.3d 308 (2d Cir. 2006) ............................................................................4

*In re Mahoney v. Lewis*,
  199 A.D.2d 734 (N.Y. App. Div. 1993) ..........................................................6

*Jackson-Bey v. Hanslmaier*,
  115 F.3d 1091 (2d Cir. 1997) ........................................................................10

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005) ..........................................................................15

*Johnson v. California*,
  543 U.S. 499 (2005)........................................................................................20

*Kramer v. Union Free Sch. Dist. No. 15*,
  395 U.S. 621 (1969)........................................................................................24

*McDonald v. City of Chicago*,
  130 S. Ct. 3020 (2010)...............................................................................2, 13

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
  460 U.S. 37 (1983)..........................................................................................21

*Tinelli v. Redl*,
  199 F.3d 603 (2d Cir. 1999) ............................................................................5

*Tunick v. Safir*,
  209 F.3d 67 (2d Cir. 2000) ...........................................................................5, 7

*United States v. Decastro*,
  No. 10-3773, 2012 WL 1959072 (2d Cir. June 1, 2012) ................. 15, 16, 21

*Vt. Right to Life Comm., Inc. v. Sorrell*,
  221 F.3d 376 (2d Cir. 2000) ............................................................................9

**Constitutional Provisions**

*U.S. Const. amend. II..........................................................................................12

*U.S. Const. amend. XIV......................................................................................24

**Statute**

N.Y. Penal Law § 400.00 ................................................................. 5, 6, 12

**Other Authorities**

N.Y. State Bar Ass'n, Certification of Questions of State Law in the Second
    Circuit (2007), *available at* http://www.nysba.org/Content/
    ContentFolders4/CommercialandFederalLitigationSection/
    ComFedReports/AppPracCertofQuestions2ndCircuit.pdf ............................8

## INTRODUCTION AND SUMMARY

Appellee Bartlett's brief is notable for what it concedes. Bartlett concedes "that the Second Amendment guarantees an individual right to possess a handgun for self-defense in the home that may not be infringed by the States." Bartlett Br. 1; *see id.* at 18–19. Bartlett admits that this right likely extends to protect home handgun possession for "individuals who reside in New York seasonally and are domiciled elsewhere." *Id.* at 5. Bartlett also appears to accept that if either strict scrutiny or the categorical approach of *Heller* applies to the New York law at issue here, the law cannot survive. *Id.* at 35–42.

That Bartlett and Mr. Osterweil agree on the nature and scope of the Second Amendment right should make this an easy case for this Court to resolve. Indeed, Bartlett dedicates only a few pages of his brief to an actual defense of the domicile requirement, and all of that depends on the assumption that the law is subject to a standard of review far more lenient than that compelled by *Heller* and *McDonald*. Instead, Bartlett uses the balance of his brief to raise a host of meritless arguments in an attempt to distract this Court from reaching the core—and easily answered— question presented: whether the Second Amendment protects the right of a part- time New York resident to possess a handgun in his home. Bartlett urges this Court to certify the question to the New York State Court of Appeals so that the New York court can consider the impact of the Federal Constitution on the

prevailing view in the New York courts.  He also asserts that Mr. Osterweil lacks standing to bring this suit based on the denial of his license, and—in an argument newly crafted on appeal—that what Mr. Osterweil really wanted was a handgun for target practice, which is afforded minimal Second Amendment protection.

None of these efforts to keep this Court from deciding the merits of the federal constitutional question presented here is valid, and the merits of the constitutional question are straightforward.  Despite his best efforts, Bartlett cannot explain away the fact that denying an in-home handgun license to a part-time resident is inconsistent with the Second Amendment and the Supreme Court's recent decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).  As those cases make clear, the Second Amendment right, especially when it comes to self-defense in the home, is fundamental.  It is not a seasonal right that can be denied during the summer, or limited to full-year residents.  The Supreme Court has made clear that any law that categorically bans the possession of handguns in the home is unconstitutional.  That is exactly what the New York law at issue here, as interpreted and applied by the District Court, does and thus that law is invalid.

## ARGUMENT

### I.     Because This Case Turns On The Scope Of Mr. Osterweil's Federal Constitutional Rights, Certification Is Unnecessary.

The primary issue in this case is whether Mr. Osterweil can be denied the right to possess a handgun in his New York home consistent with the Second Amendment.  This Court does not need to certify that federal constitutional question to the New York State Court of Appeals.  As Mr. Osterweil argued in his motion opposing certification, *see* Doc. 79[1], this case requires interpreting the scope of the Second Amendment right to bear arms, the Supreme Court's decisions in *Heller* and *McDonald* fleshing out that right, and the Equal Protection Clause of the Federal Constitution.  This Court—not the New York State Court of Appeals— is the appropriate forum for the resolution of these issues.

Despite the federal constitutional issue at the heart of this case, Bartlett argues that certification is necessary, for the most part repeating the arguments contained in his motion for certification.  *See* Doc. 68.  Bartlett first argues that the New York State Court of Appeals should be given the opportunity to decide the issue, suggesting that "critical federalism interests" require certification.  Bartlett Br. 23.  But federalism interests are at their nadir when it comes to considering

---

[1]  Citations to the District Court docket (No. 09-CV-00825) are designated "N.D.N.Y. Doc."; citations to the docket in this case on appeal (No. 11-2420) are designated "Doc."; and citations to the Joint Appendix are designated "A__."

federal constitutional limits on state action under the Fourteenth Amendment. By incorporating the fundamental protections of the Bill of Rights, including the Second Amendment, and requiring states to treat persons equally, the Fourteenth Amendment restricts state action, rather than preserving some special role for state courts. To be sure, the constitutional violation of Mr. Osterweil's rights was accomplished by Bartlett's application of New York law. That does not mean, however, that this Court must certify the underlying constitutional question to a New York court. Bartlett concedes that the scope of state law before *Heller* and *McDonald* was well-settled, and that a change in federal constitutional law is the primary basis for reconsidering those decisions. In light of the primacy of the federal constitutional questions, certification makes no sense here.

Next, Bartlett submits that certification is warranted because the validity of New York's handgun licensing regime "is of great importance to the State." *Id.* at. 22. But respect for Mr. Osterweil's fundamental constitutional rights is even more important to Mr. Osterweil, and federal courts exist to protect and adjudicate such federal rights. In all events, "importance to the State" is hardly a sufficient basis for certification. Indeed, because this Court only "resort[s] to certification sparingly," *Highland Capital Mgmt. v. Schneider*, 460 F.3d 308, 316 (2d Cir. 2006), certification is "not proper" unless the issue presents a complex question of New York law, there is a split in authority regarding the issue in the state courts, or

4

there is insufficient state law precedent available to guide this Court's appraisal of the matter, *Tinelli v. Redl*, 199 F.3d 603, 606 n.5 (2d Cir. 1999). *See DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005); *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 127 (2d Cir. 2010). This dispute has none of those attributes. The issue at the heart of the case is a straightforward matter of federal constitutional law and the only precedents necessary to decide the case are *Heller* and *McDonald*.

Bartlett also suggests that certification is required here because the New York State Court of Appeals may opt to apply the cannon of constitutional avoidance to N.Y. Penal Law § 400.00(3)(a)'s residency requirement and thus save the statute. But the case that Bartlett cites for this proposition—*Tunick v. Safir*, 209 F.3d 67 (2d Cir. 2000)—critically undermines it. In *Tunick*, this Court expressly recognized that it was inappropriate to certify a case simply because a plaintiff challenges a state law on constitutional grounds, the state's highest court has not issued an authoritative interpretation of the statute, and the constitutional question could potentially be avoided by adopting a specific reading of the state statute at issue. *Id.* at 73–74. So it is here. Just because the New York State Court of Appeals *might* construe § 400.00(3)(a) in a manner that makes that statute consistent with the Second Amendment does not mean that this Court *must* certify the question.

5

Relatedly, Bartlett contends that if the New York State Court of Appeals interprets § 400.00(3)(a) to allow "individuals who reside in New York seasonally" to obtain handgun licenses, Mr. Osterweil's "constitutional challenge will be moot and this court will have no occasion to reach the constitutional issues Osterweil seeks to raise on this appeal." Bartlett Br. at 5. But Bartlett's primary contention is that it is the Federal Constitution as authoritatively construed in *Heller* and *McDonald* that would cause the New York Court of Appeals to reconsider *In re Mahoney v. Lewis*, 199 A.D.2d 734 (N.Y. App. Div. 1993). Thus, this is not a case of true constitutional avoidance—at least one court will have to consider the federal constitutional question, and there is no sound reason that it should not be this Court. Bartlett emphasizes the scenario where the New York Court of Appeals reinterprets New York law in light of *Heller* and *McDonald*. But the alternative outcome underscores the centrality of the federal constitutional question and the inappropriateness of certification in this case. If the New York State Court of Appeals holds that nothing in *Heller*, *McDonald*, or the Second Amendment more broadly, counsels against adopting the same view of New York law as that espoused in *Mahoney*, and adopted by Bartlett and the District Court, this Court would then have to address the same Second Amendment questions, creating the very real risk of a split in authority on the scope of Second Amendment rights in a single case. That possibility of different resolutions of the same Second

6

Amendment issues (albeit considered in a constitutional avoidance posture by the New York court and directly by this Court) demonstrates why the real issue in this case is a constitutional one—not an issue of state law—that should be decided by this Court. To the extent that the concern informing whether certification is appropriate is "[t]he potential for the '"friction-generating error" between the federal and state court systems,'" *Tunick*, 209 F.3d at 94 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997)), as Bartlett suggests, the possibility of not just friction but diametrically opposed views of the same constitutional question counsels against certification, not for it.

As Mr. Osterweil pointed out in his opposition to Bartlett's certification motion, certification in this case will also result in an intolerable and unnecessary delay in vindicating his constitutional right to possess a handgun in his New York home—a right made manifestly clear by *Heller* and *McDonald*. And this Court has recognized that "the effect of certification, and its attendant delay, on the constitutional right here asserted . . . . cannot be ignored." *Tunick*, 209 F.3d at 87. Bartlett attempts to downplay the ongoing irreparable harm caused by the continuing delay in this case, concluding that "[t]here is little risk that any delay due to certification would harm Osterweil's asserted constitutional rights." Bartlett Br. 26. This is so, Bartlett contends, because Mr. Osterweil uses his New York home only in the summer, this case will not be decided this summer—certification

7

or not—and that the case, even with certification, will be decided by the summer of 2013. First and foremost, Bartlett misapprehends the nature of constitutional rights and grossly underestimates the seriousness with which the law views the violation of those rights. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Conn. Dep't of Envtl. Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004) (same). Mr. Osterweil applied for the license at the crux of this case more than four years ago. For Bartlett to suggest that any added delay will not exacerbate the injury that Mr. Osterweil has already suffered reveals just how little value Bartlett assigns to Second Amendment rights.

What is more, it is not at all clear that the factual premise underlying Bartlett's ill-founded timing argument is correct. "In New York, the average time from the Court of Appeals' receipt of a request for certification to determining whether to accept is 38 days and the average time from certification to resolution is approximately seven months." N.Y. State Bar Ass'n, Certification of Questions of State Law in the Second Circuit 6 (2007), *available at* http://www.nysba.org/ Content/ContentFolders4/CommercialandFederalLitigationSection/ComFedReport s/AppPracCertofQuestions2ndCircuit.pdf. So if the Court does decide to certify the question after argument, which could be months from now, and the New York Court of Appeals accepts certification and decides the question in a manner inconsistent with Mr. Osterweil's Second Amendment rights, it is optimistic to

think that this case will come to a close before summer 2013. But if certification is to occur, this Court should do everything it can to expedite proceedings to minimize any further delay in the recognition of Mr. Osterweil's constitutional rights.

As an alternative to certification, Bartlett briefly suggests that if the Court does not certify, it should consider abstaining under the *Pullman* doctrine. Bartlett Br. 24–25. Abstention would be wholly inappropriate here. Even if the necessary preconditions for *Pullman* abstention were met—and they are not—abstention would not be the proper course. As this Court has recognized, "important federal rights can outweigh the interests underlying the *Pullman* doctrine." *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 385 (2d Cir. 2000) (internal quotation marks and brackets omitted). And when the wrong alleged is a violation of constitutional rights, as it is here, "the weight of the" "issues involved counsels against abstaining." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004).

But more fundamentally, neither certification nor abstention is necessary because, as Bartlett concedes, "the Second Amendment guarantees an individual right to possess a handgun for self-defense in the home that may not be infringed by the States," Bartlett Br. 1, and Bartlett's denial of Mr. Osterweil's application for an in-home handgun license violates that right. This Court does not need to ask

9

the New York State Court of Appeals to tell it what Bartlett admits, the Second Amendment compels, and *Heller* and *McDonald* make plain.

## II. Bartlett's Attempts To Distract This Court From Addressing The Constitutional Issue At The Heart Of This Case Are Unavailing.

Although the Second Amendment issue at the heart of this case—whether *Heller* extends to the homes of part-time residents—is straightforward, Bartlett distorts the facts and the law in an effort to distract the Court from addressing that straightforward question. After devoting a significant portion of his brief to arguing for certification on the premise that *Heller and McDonald* are game-changing decisions that will cause the New York courts to revisit their approach to residence, Bartlett shifts gears and asserts that denying Mr. Osterweil's license was not constitutionally problematic notwithstanding *Heller* and *McDonald*. But Bartlett can accomplish this about-face only by distorting the record and suggesting that Mr. Osterweil lacks standing, or that this case involves hunting and target practice rather than protection of the home.

Little ink need be wasted on Bartlett's standing argument. Mr. Osterweil applied for and was denied a license to possess a handgun in his home in violation of his constitutional right to bear arms and he has standing to challenge that denial in federal court. *Cf. Baker v. Carr*, 369 U.S. 186, 205–07 (1962); *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). Bartlett elides this obvious conclusion, and instead questions Mr. Osterweil's standing on the basis of *Bach v.*

10

*Pataki*, 408 F.3d 75 (2d Cir. 2005). But *Bach* distinguishes itself. In *Bach*, this Court held that Bach had standing to challenge New York's handgun licensing requirement even though he did *not* apply for a license. As Mr. Osterweil applied for a license and was denied that license, he has standing *a fortiori*. To the extent that *Bach* is relevant to the question of Mr. Osterweil's standing in this case at all, it is to show that Mr. Osterweil would have had standing even if he had not applied for a license. Because the prevailing view of New York law required that one be a domiciliary to obtain an in-home handgun license, Mr. Osterweil "had nothing to gain . . . by completing and filing an application." *Bach*, 408 F.3d at 82–83. But Mr. Osterweil did apply for a license, and that application was denied. Because the grounds of that denial were inconsistent with Mr. Osterweil's fundamental Second Amendment right, he has standing to challenge that denial.

Moving on from his standing argument, Bartlett next asserts—for the first time in this litigation—that Mr. Osterweil's Second Amendment right to bear arms was not violated when his license application was denied because he sought that license for "target practice and hunting," not self-defense. This argument is forfeited and flawed both legally and factually.

There is no need for this Court to consider this newly-minted argument on appeal. There is nothing remotely jurisdictional that would justify this Court excusing Bartlett's failure to raise this argument earlier. *See Bogle-Assegai v.*

11

*Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (internal quotation marks omitted).

Of course, the real reason that Bartlett did not raise this argument is that it was crystal clear through the course of the back and forth in the application process that Mr. Osterweil wanted to possess a handgun for, *inter alia,* use on his New York premises for self-protection. When Mr. Osterweil filled out his "State of New York Pistol/Revolver Application," he was instructed to indicate whether he was applying for a license to "carry concealed," "possess on premises," or "possess/carry during employment." A41. He put an "X" in the "possess on premises" box—the form at issue instructs the applicant to "check only one." A41. As New York law explains, a "possess on premises" permit authorizes an individual to "have and possess" "a pistol or revolver" "in his dwelling." N.Y. Penal Law § 400.00(2)(a).

The right to have and possess a pistol or revolver in one's dwelling—what Mr. Osterweil asked the State's permission to do—is the core right that the Second Amendment protects. The Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. That Amendment confers an individual right to "possess and carry weapons in case of confrontation," *Heller*, 554 U.S. at 592, and it is "valued because the possession of

12

firearms [i]s thought to be essential for self-defense," *McDonald*, 130 S. Ct. at 3048. The Founders and Framers "of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty" *because* it is essential to self-defense. *Id.* at 3042. An individual need not proclaim that he needs a weapon to defend himself in order to be entitled to his Second Amendment right. Nor does the fact that he may want to use the firearm for other purposes as well in any way detract from his constitutional right to possess the firearm for self-defense purposes. The right ensures that he is able to do so should the need arise. Thus Mr. Osterweil did not need to explain to the State why he was invoking his right to possess a handgun in his home. That he sought to do so suffices to bring his request fully within the core of what the Second Amendment protects.

The absurd result of applying Bartlett's logic helps demonstrate the point. Under Bartlett's view of the Second Amendment, he could deny the application of any individual seeking an in-home handgun permit if that person did not write "for self-defense purposes" on the application. The Second Amendment contains no such requirement, and neither *Heller* nor *McDonald* even hint that a citizen must attest to their intent to use a gun to protect their home to be entitled to the core right that the Second Amendment protects.

In any event, by the time Bartlett denied Mr. Osterweil's application for an in-home hand-gun license on May 29, 2009, it was crystal clear that Mr. Osterweil sought that license not only for "target practice and hunting," but to protect his hearth and home. This reality presumably explains why this argument did not surface during the earlier stages of the litigation. Mr. Osterweil applied for the license in question on May 21, 2008. A9; A25 ¶ 2. In a letter to Bartlett on July 10, 2008, Mr. Osterweil stated that he sought the "license to purchase and hold a handgun." A52. In that same letter, Mr. Osterweil informed Bartlett that *Heller* "stat[ed] that the Second Amendment was adopted to permit all citizens to own and bear arms to protect them in their homes." *Id.* Mr. Osterweil then inquired "[i]f the amendment was meant to permit me to protect myself in my home, is it not logical to assume that I have the same right in a second home?" *Id.*

Mr. Osterweil reiterated these points in a letter to Bartlett on March 4, 2009, stating that he was entitled to a license because "[t]he entire purpose of the Second Amendment [is] . . . to [e]nsure the safety of each individual in his home." A97. Though he was not required to do so, Mr. Osterweil clearly communicated to Bartlett why he wanted to possess a handgun in his New York home: to protect his family.[2]

---

[2] Furthermore, in his summary judgment motion in the District Court, Mr. Osterweil invoked his "fundamental right to be secure in one's home," arguing that

But Bartlett's argument is not only forfeited and factually flawed, it is legally beside the point. The right protected by the Second Amendment neither requires that citizens declare their intended use for a firearm nor circumscribes the use of a firearm for hunting, target-shooting, or self-protection purposes.[3] Any firearm can be used for target shooting, and such practice only makes the firearm more useful for other purposes, such as self-defense and hunting. Moreover, one of the key insights of *Heller* is that firearms that were useful for militia use or hunting purposes were also useful for the self-defense justification of the Framers for treating the Second Amendment as a fundamental, individual right. *See Heller*, 554 U.S. at 636–37.

This Court recently recognized the general point in *United States v. Decastro*, No. 10-3773, 2012 WL 1959072, at *4 (2d Cir. June 1, 2012). As this

---

a state's attempt "to limit Plaintiff to being armed to protect his family in only one of his homes would be in direct conflict with the overriding concept and thrust of the Second Amendment." N.D.N.Y. Doc. 30 at 5–6. Bartlett did not respond to this motion by arguing that Mr. Osterweil never invoked this right. Instead, consistent with his view of this case (until now), he argued that Mr. Osterweil's license was appropriately denied because he was not domiciled in New York. *See* N.D.N.Y. Doc. 33-4 at 8–12.

[3] To the extent that any factual issue as to Mr. Osterweil's motivation to apply for a license is relevant, properly before this Court, and in doubt, because the District Court granted Bartlett's motion for summary judgment, any doubt as to a factual issue must be resolved in Mr. Osterweil's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

Court stressed, *Heller* and *McDonald* "emphasized the practical impact of a challenged regulation on the ability of citizens to possess and use guns for the core lawful purpose of self-defense." *Decastro*, 2012 WL 1959072, at *4. As a practical matter, were the State able to prohibit an individual from engaging in target practice with a handgun, that would significantly hinder that individual's ability to "use guns for the core lawful purpose of self-defense." *Id.* And as a constitutional matter, the protective ambit that attaches to a fundamental constitutional right necessarily includes the protection of the activities necessary to effectually exercise that right. *Cf. Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877–78 (1990).[4]

The Court of Appeals for the Seventh Circuit has also recognized as much. In *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), that Court stated that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." Thus, preventing individuals "from engaging in target practice . . . . is a serious encroachment on the

---

[4] Bartlett contends that a state law prohibiting individuals from obtaining handgun licenses to engage in target practice would be subject to rational basis review. Bartlett Br. 32. That is clearly wrong. "If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Heller*, 554 U.S. 628 n.27.

right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense." *Id.* at 708.[5]

## III. New York's Ban On In-Home Handgun Possession By Part-Time State Residents Violates The Second Amendment.

After Bartlett's attempts to distract this Court from the core question in this case are discarded, the resolution of the core constitutional question—to which Bartlett dedicates but a few pages of his brief—is straightforward. The District Court in this case held that under New York's licensing regime individuals like Mr. Osterweil—part-time residents who are non-domiciliaries—"are completely excluded from the [State's] license-application procedure." A159. That categorical ban is flatly inconsistent with *Heller*'s holding and its pronouncement that the Second Amendment protects the fundamental right of "law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 628.

### A. A Complete Ban On In-Home Handgun Possession Cannot Survive *Heller*.

As explained in Mr. Osterweil's opening brief, in the wake of *Heller*, New York's ban on in-home handgun possession by part-time residents cannot stand.

---

[5] As *Ezell* noted, this understanding of the Second Amendment right is confirmed by the historical sources upon which *Heller* relied. *See* 651 F.3d at 704. *Heller* quoted Thomas Cooley's 1868 Treatise on Constitutional Limitations, stating that the right "to bear arms implies something more than the mere keeping; it implies the learning to handle and use them . . . ." 554 U.S. at 617–18.

Osterweil Br. 30–42.  *Heller* invalidated a District of Columbia law categorically banning such possession.  554 U.S. at 635.  The New York law's proscription is limited to part-year residents, but it is no less categorical or severe.  It prohibits an entire class of law-abiding individuals who would otherwise be able to possess handguns in their home from doing so based on the fact that they are not domiciled in New York.  Neither the Second Amendment nor *Heller* draws a distinction between part-time and full-time residents.  *Heller* and *McDonald* in no way suggest that a citizen's right to protect his hearth and home is limited to one home and one hearth.  Nor is the need for self-defense in any way reduced for part-time residents.  If anything, the fact that residents are not present year round may make part-time residences particularly attractive targets for thieves and make the self-defense right particularly important.  *See* Osterweil Br. 12, 33.  Bartlett makes no real response to the argument that the categorical approach of *Heller* dooms a categorical rule of denying permits to part-time residents.  Bartlett attempts to dilute the standard of review and justify its ban under rational basis or intermediate scrutiny, but that ignores the reality that *Heller*'s categorical approach dooms the New York law without needing to reach the level of scrutiny question.  A requirement that one must be domiciled in a state in order to exercise his fundamental right to protect his home cannot be squared with the Second Amendment as interpreted in *Heller*.

18

**B.    New York's Ban On In-Home Handgun Possession By Part-Time Residents Fails Strict Scrutiny.**

Bartlett likewise fails to advance any sort of argument that a domicile requirement could survive such scrutiny.  Instead, he asserts that strict scrutiny is inappropriate in this case for two reasons.   First, Bartlett argues that Mr. Osterweil's opening brief does "not cite to a single case supporting application of strict scrutiny, even with respect to the 'core' home self-defense component of the Second Amendment right."   Bartlett Br. 36.  Not so.  Citations to *Heller* and *McDonald*—Supreme Court cases demanding the application of strict scrutiny in this case if a level of scrutiny is needed—are plentiful in Mr. Osterweil's opening brief.   *Heller* and *McDonald* clearly establish that to the extent that levels-of-scrutiny analysis is necessary to resolve the question in this case, the scrutiny must be strict.  Osterweil Br. 17–30.  Moreover, the absence of citations to cases beyond *Heller* and *McDonald* only underscores the extreme nature of New York's denial of Second Amendment rights to part-time residents.

Bartlett's second, broader argument is that "strict scrutiny is not the appropriate standard of review even for regulations that substantially burden the 'core' Second Amendment right of self-defense in the home."  Bartlett Br. 37.  By Bartlett's lights, this conclusion is compelled by *Heller* because in Justice Breyer's *Heller* dissent he noted that the majority opinion rejects strict scrutiny "by broadly

19

approving a set of laws . . . whose constitutionality under a strict scrutiny standard would be far from clear."  554 U.S. at 688.

Bartlett makes at least two mistakes.  First, he misapprehends the interaction between majority and dissenting opinions (both in the Supreme Court and courts more generally).    The former are authoritative, the latter are not.    Indeed, dissenting opinions are notorious for sometimes exaggerating the consequences of the majority and other times minimizing differences that are in fact significant. The best source for the meaning of a majority decision is the majority decision. And the Court's opinion in *Heller* squarely rejected the application of rational basis and intermediate scrutiny when Second Amendment rights are burdened.  *Id.* at 628 n.27, 634.  That means that neither level of scrutiny is appropriate.  The fact that Justice Breyer, in dissent, suggests that the majority rejected the application of strict scrutiny reveals nothing more than the dissenters' opinion.

Second, Bartlett implicitly makes the same error as Justice Breyer.  The fact that *Heller* listed some laws that may not offend the Second Amendment—such as laws banning the possession of firearms in sensitive places—does not undermine the application of strict scrutiny generally, let alone when it comes to regulations affecting possession in the home.  *See Heller*, 554 U.S. at 626–27 & n.26.  "The fact that strict scrutiny applies says nothing about the ultimate validity of any particular law," *Johnson v. California*, 543 U.S. 499, 515 (2005) (internal

20

quotation marks omitted), and thus anticipating in dictum that some laws will likely be valid says nothing about the applicability of strict scrutiny.

As the Court pointed out in *Heller* in rejecting Justice Breyer's "'interest-balancing' approach"—otherwise known as "intermediate scrutiny"—the Second Amendment right to bear arms is a fundamental right and there is "no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest balancing' approach." *Heller*, 554 U.S. at 634–35. This Court recently recognized the fundamental nature of the Second Amendment right in *Decastro*, stating that the Second Amendment right is a right that is "fundamental to our scheme of ordered liberty." 2012 WL 1959072, at *5. And "when government action impinges upon a fundamental right protected by the Constitution"—as it does here—strict scrutiny applies. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983).

Again, Bartlett does not engage in an analysis of how denying Mr. Osterweil's application for an in-home handgun license could possibly survive strict scrutiny. The justifications that Bartlett offers in making his intermediate scrutiny arguments make clear that it cannot. Bartlett contends that the domicile requirement is justified by two state interests. The first is New York's interest in protecting "the public safety" and preventing "handgun crime." Bartlett Br. 37. If protecting public safety and preventing handgun crime were interests sufficient to

allow the State to prevent in-home handgun possession, then the District of Columbia handgun ban would still be on the books. It is not. As *Heller* made clear, "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." 554 U.S at 636. Banning handgun possession in the home in the name of public safety is one of them.

Next, citing this Court's decision in *Bach*, Bartlett contends that the State has an interest in "monitoring" its licensees sufficient to justify the restraint that New York law imposes on Mr. Osterweil's Second Amendment right. Bartlett Br. 40. But whatever validity that argument has in the context of an individual merely passing through a State, the possession of an in-state residence provides a basis for the imposition of all manner of state regulations and responsibilities that the state can sufficiently monitor. The State cannot simply throw up its hands and suggest the job becomes too difficult in a context when it implicates a fundamental constitutional right. Moreover, as argued in Mr. Osterweil's opening brief, the fact that New York allows domiciliaries who may spend little-to-no time in New York to obtain in-home handgun licenses critically undermines Bartlett's argument that the state has a substantial interest in withholding licenses from part-time residents. *See* Osterweil Br. 36–37. For this reason, New York's ban fails even intermediate scrutiny.

Perhaps in recognition of the weakness of these arguments as a general matter, Bartlett attempts to invoke the fact that Mr. Osterweil "has not provided fingerprints usable by the federal and state governments" as highlighting the importance of the State's monitoring interest as applied to Mr. Osterweil specifically. Bartlett Br. 41. That argument is misplaced. According to Bartlett himself, he denied Mr. Osterweil's request for a "license on the ground that Osterweil averred that he was not domiciled in New York." Bartlett Br. 2. Mr. Osterweil's worn fingerprints had nothing to do with the reason that his license application was ultimately denied and they have nothing to do with the case as it appears before this Court.

At the end of the day, whether it be because it is fatally inconsistent with *Heller* or because it cannot survive strict scrutiny (or even intermediate scrutiny), denying Mr. Osterweil a license to possess a handgun in his New York home violates the Second Amendment.[6]

## IV. New York's Ban On In-Home Handgun Possession By Part-Time State Residents Violates The Equal Protection Clause.

New York's ban on in-home handgun possession is also constitutionally problematic because it treats similarly situated individuals differently, in violation

---

[6] Bartlett's effort to invoke rational basis review fails for all the reasons that his effort to recharacterize Mr. Osterweil's application for a premises license as limited to target-shooting and hunting fails. *See supra* pp. 11–16.

23

of the Equal Protection Clause. U.S. Const. amend. XIV, § 1. Here again, strict scrutiny applies: when the state draws distinctions as to who can and cannot exercise a fundamental right, those distinctions must further a compelling state interest. *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626–29 (1969). As explained, New York's proffered interest in protecting the public safety and monitoring its licensees is insufficient to justify restraining the exercise of a fundamental right. Therefore, New York's differential treatment of domiciliaries and part-time residents with respect to the exercise of that right violates the Equal Protection Clause.

In a manner similar to his shrugging off of strict scrutiny analysis, Bartlett does not seriously contend that the State has a compelling interest in treating Mr. Osterweil differently from his New York neighbors. Bartlett points out an obvious difference between Mr. Osterweil and New York domiciliaries: the domiciliaries are domiciled in New York and Mr. Osterweil is not. Bartlett Br. 42–43. But to state the difference is not to explain why it matters or what interest is sufficiently compelling to allow one group to exercise its fundamental constitutional rights and not the other.

Bartlett raises the same "fingerprints" canard in opposing Mr. Osterweil's equal protection challenge as he raised in support of the State's monitoring interest. Bartlett Br. 42. That argument is no more relevant here. Again, Bartlett confuses

24

the issue of the constitutional validity of the State's domicile requirement with the other requirements that must be met for a domiciliary to obtain a license. The only requirement at issue here is the State's domicile requirement and that requirement runs afoul of the Equal Protection Clause.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment below.

Respectfully submitted,

/s/ Daniel L. Schmutter

| | |
|---|---|
| Paul D. Clement | Daniel L. Schmutter |
| D. Zachary Hudson | GREENBAUM, ROWE, SMITH |
| BANCROFT PLLC | & DAVIS LLP |
| 1919 M St., N.W., Suite 470 | P.O. Box 5600 |
| Washington, D.C. 20036 | Woodbridge, NJ 07095 |
| Telephone: (202) 234-0900 | (732) 549-5600 |
| pclement@bancroftpllc.com | dschmutter@greenbaumlaw.com |

*Counsel for Plaintiff-Appellant*

July 10, 2012

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), the undersigned certifies that the brief complies with the applicable type-volume limitations. The brief contains 6,014 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This certificate relies upon Microsoft Word 2010's word count feature; the program used in drafting this brief. The brief complies with the typeface requirements for Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Words' word processing program in 14-point Times New Roman font.

Dated: July 10, 2012

/s/ Daniel L. Schmutter
Daniel L. Schmutter
GREENBAUM, ROWE, SMITH
 & DAVIS LLP
P.O. Box 5600
Woodbridge, NJ 07095
(732) 549-5600
dschmutter@greenbaumlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2012, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Second Circuit this Reply Brief for Appellant Alfred G. Osterweil and further certify that the parties' counsel will be notified of, and receive, this filing through the Notice of Docket Activity generated by this electronic filing.

Dated: July 10, 2012

/s/ Daniel L. Schmutter
Daniel L. Schmutter
GREENBAUM, ROWE, SMITH
 & DAVIS LLP
P.O. Box 5600
Woodbridge, NJ 07095
(732) 549-5600
dschmutter@greenbaumlaw.com